IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBNEKA WESNEY DUNN, | : | CIVIL ACTION NO. |
| | : | No. 1:12-CV-3256-WSD-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN COLVIN, Commissioner of | : | **FINAL REPORT AND** |
| the Social Security Administration, | : | **RECOMMENDATION ON AN** |
| | : | **APPEAL FROM A SOCIAL** |
| Defendant. | : | **SECURITY DISABILITY ACTION** |

Plaintiff is a 20 year old female seeking Child's Supplemental Security Income ("SSI") under the Social Security Act ("the Act") and alleging disability and entitlement thereto on the basis of a learning disability and skin rash. Record (hereinafter "R.") at 144. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") who denied Plaintiff's claim.

Plaintiff's mother protectively filed an application for benefits on November 14, 2007. R. at 140. Plaintiff filed another application for SSI on January 4, 2008. R. at 113. The Agency denied that application both initially on March 31, 2008 and on reconsideration on July 8, 2008. R. at 93-94. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 29,

2009. R. at 42. After the hearing, the ALJ issued a decision on February 25, 2010 denying Plaintiff's claim on the grounds that she was not under a "disability" as defined by the Act. R. at 21-33. On July 20, 2012, the Appeals Council of the Social Security Administration denied Plaintiff's Request for Review of the decision of the ALJ, and made that decision the final decision of the Commissioner. R. at 1-3. Plaintiff, having exhausted all administrative remedies, filed this action on September 18, 2012 [1]. It is now before the undersigned upon the administrative record and the parties' pleadings and briefs and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

## I.     STANDARD FOR DETERMINING DISABILITY

A child under the age of eighteen is considered disabled for purposes of disability benefits if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

As summarized below, the Commissioner uses a four-step sequential analysis when evaluating a child's disability claim.

> (1)    The Commissioner must determine whether the applicant is working or engaged in substantial gainful activity; if so, the claim is denied.

> (2)    The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments results in significant functional limitations. If not, the claim is denied.

> (3)    The Commissioner must determine whether the impairment meets, medically equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is entitled to disability benefits.

> (4)    The Commissioner must determine whether the impairment is functionally equivalent to a listed impairment; if not, the claim is denied.

*See* 20 C.F.R. §§ 416.924, 416.926.

Under step three of this analysis, the Commissioner must determine whether the claimant's impairment meets, medically equals, or exceeds the severity of any impairments found in the "Listing of Impairments" identified in the Social Security regulations. *See* 20 C.F.R. § 416.924(d). The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent an adult from doing any gainful activity, or, for a child, that cause marked and severe functional limitations. *See* 20 C.F.R. § 404.1525(a); 20 C.F.R. § 416.925(a).

3

Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over, and Part B contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18. *See* 20 C.F.R. §§ 404.1525(b), 416.925(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. In evaluating disability for a person under age 18[1], the Listings in Part B should be used first; if the medical criteria in Part B do not apply, the medical criteria in Part A will be used.  *See* 20 C.F.R. §§ 404.1525(b)(2), 416.925(b)(2).

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must also provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. §§ 404.1525(a)-(d), 416.925(a)-(d); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the symptoms, signs, and laboratory findings of all the impairments to determine whether the combination is medically equal to any listed impairment. *See id.*; *see also Wilson*, 284 F.3d at 1224.

---

[1] Plaintiff was 14 years old when her mother protectively filed an application on her behalf and 16 when the ALJ issued his denial.

If the claimant's impairment (or combination of impairments) is not medically equivalent to any listing, the Commissioner may find that the impairment is functionally equivalent under step four if the impairment results in an "extreme" limitation in one area of functioning, or a "marked" limitation in two or more areas of functioning. 20 C.F.R. § 416.926a(a). To determine whether an impairment is functionally equivalent to a listing, the six areas of functioning that must be considered are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for onself; and 6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

In evaluating the severity of the impairment in each of these six areas of functioning, a "marked" limitation means that the "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is a limitation that is "more than moderate" but "less than extreme." *Id.* It is the equivalent of functioning that occurs in an area in which standardized testing reflects a score that is at least two, but less than three, standard deviations below the mean. *See id.* An "extreme" limitation means that the "impairment(s) interferes very seriously with [the] ability to independently

initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). An "extreme" limitation is a limitation that is "more than marked," and is a rating given to the worst limitations. *Id.* It is the equivalent of functioning that occurs in an area in which standardized testing reflects a score that is at least three standard deviations below the mean. *Id.*

## II.   **FINDINGS OF THE ALJ**

The ALJ made the following findings of fact ("FOF"):

(1)   The claimant was born on May 1, 1993. Therefore, she was a school-age child on November 14, 2007, the date the application was filed, and is currently an adolescent.

(2)   The claimant has not engaged in substantial gainful activity at any relevant time.

(3)   The claimant has the following severe impairments: attention deficit hyperactivity disorder and borderline personality disorder.

(4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926).

(5)   The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)).

(6)   The claimant has not been disabled, as defined in the Social Security Act, since November 14, 2007, the date the application was filed.

R. at 21-33.

6

### III.    CLAIMS OF ERROR

Plaintiff alleges that the Commissioner erred for the reasons set forth below.

A.    The ALJ deprived Plaintiff of a full and fair hearing when he did not evaluate Plaintiff's impairments and symptoms according to Listing 112.05.

B.    Plaintiff's impairments are so severe that they functionally equal the listings; the ALJ erred by finding otherwise.

C.    The ALJ did not apply the appropriate legal standards in determining Plaintiff's credibility and the ALJ's credibility determination is not supported by substantial evidence.

### IV.    SCOPE OF JUDICIAL REVIEW

This Court's review is limited. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court may only determine whether substantial evidence supports the Commissioner's findings, and whether he applied proper legal standards. The Commissioner's findings are otherwise conclusive. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*,

826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *See Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *See Walker*, 826 F.2d at 999.

## V.    ANALYSIS OF CLAIMS OF ERROR

A.    The ALJ deprived Plaintiff of a full and fair hearing when he did not evaluate her impairments and symptoms according to listing 112.05.

Plaintiff argues that the record evidence establishes that she suffers from mental retardation pursuant to Listing 112.05(D). *See* Pl. Brf. [10] at 12. Because Plaintiff meets the applicable criteria, and because the ALJ "provided no rationale and instead merely concluded" that she does not have an impairment or combination of

8

impairments that meet one of the Listings, "[t]he Commissioner's decision should be reversed and this matter remanded with a directed finding of disability." *Id*. at 10, 13. Put another way, Plaintiff argues that, had the ALJ explicitly evaluated the record evidence against the standards found in Listing 112.05(D), he would have found Plaintiff to be suffering from mental retardation and awarded her disability benefits. The ALJ's failure to follow this approach was therefore reversible error, according to Plaintiff.

Specifically, Section 112.05 provides in relevant part:

112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied . . . .

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1. "The first prong is sometimes called the 'capsule' requirement or the general diagnostic description that applies to all of the Listing 112.05, while the second prong is one of several ways to satisfy the Listing's severity requirement." *Richard v. Astrue*, 480 F. App'x 773, 776 (11th Cir. 2012).

9

> Because a party must meet both prongs of Listing 112.05(D),
>
> it is not sufficient to merely demonstrate an IQ score in the appropriate range and an additional physical or mental impairment . . . . [Plaintiff] is also required to demonstrate that she has the deficits in adaptive functioning to satisfy the diagnostic description in the introductory paragraph of § 112.05. Thus, to meet the listing, . . . [Plaintiff] must demonstrate that she has significantly subaverage general intellectual functioning with deficits in adaptive functioning, as well as the requisite level of severity for section D.

*Singleton o/b/o M.T.S. v. Astrue*, No. 2:11cv512-CSC, 2012 WL 666098, at *4 (M.D. Ala. Feb. 29, 2012) (internal quotations and citations omitted).

The ALJ did not expressly reference Listing 112.05(D), although the ALJ stated more generally that Plaintiff's limitations did not meet or present the functional equivalent of any Listing. Plaintiff argues that this approach was procedurally and substantially erroneous. First, as a procedural matter, Plaintiff argues that there cannot be substantial evidence to support the ALJ's findings because the ALJ did not expressly discuss the mental retardation listing and why Plaintiff's symptoms do not meet it. Second, more substantively, Plaintiff argues that the record evidence shows that her condition meets or is functionally equivalent to that listing, and the ALJ erred by finding her not disabled. Plaintiff argues that she meets this listing because of a combination of Plaintiff's low IQ score, of 68, the Plaintiff's severe impairments of ADHD and Borderline Personality Disorder, and her academic difficulties including

10

repeating two grades and achieving below-grade level scores in reading, spelling, arithmetic and sentence completion. *See* Pl. Brf. [10] at 10-12. The undersigned discusses these arguments, and why they fail, below.

In terms of procedure, "there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination." *Gray v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011). Thus, an "ALJ's lack of discussion of a specific Listing at Step Three is not fatal to the ALJ's decision." *Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1365, n.17 (11th Cir. 2010) (citing *Turberville ex. rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009)). Rather, "[a] finding that a claimant's impairments are not contained in the Listings may [instead] be implied from the ALJ's decision." *Id.*; *see also Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

The ALJ here did not expressly discuss the mental retardation listing and why Plaintiff failed to meet it. But the ALJ did discuss Plaintiff's IQ score and academic history in assessing Plaintiff's functional domains, and found that despite the low IQ score, Plaintiff suffered from less than a marked limitation in acquiring and using information. *See* R. at 25, 28-29. After assessing Plaintiff's limitations regarding all the pertinent functional domains, on the basis of this and other evidence, the ALJ

11

found that Plaintiff's limitations did not meet or present the functionally equivalent of any listings. R. at 26-33.

The ALJ specifically addressed the low IQ score, which reflected "borderline" intelligence. R. at 25, 28. The ALJ noted in detail that the examining psychologist, Dr. Long, considered these results to be "an underestimation of the claimant's actual abilities." R. at 25. As the ALJ discussed, Dr. Long found that "claimant was progressing better in school than her test score indicated she was capable." *Id.* The ALJ also reviewed the academic records and concluded that although Plaintiff had "period[s]" of performing below grade level, and was retained in kindergarten and third grade, "[s]ince the third grade, the claimant has been promoted accordingly and her most recent records indicate that she is doing much better in school." R. at 28-29. The ALJ also noted that despite the IQ score, Plaintiff performed better, that is, she achieved low average to average scores, on all the subtests of the Wide Range Achievement Test 4 ("WRAT-4"). *Id.* The ALJ also discussed Dr. Long's conclusion that Plaintiff "did very well on the Bender Test and, in fact, showed her best work on the most difficult and complex design and demonstrated good organization, space utilization and put forth a fairly good effort during this part of the testing." *Id.* at 25. On the basis of all of this evidence, the ALJ found that Plaintiff had no limitation or

less than a marked limitation in all of the functional domains, and specifically had less than a marked limitation in acquiring and using information.

The undersigned finds that this analysis was sufficient, and that the ALJ's lack of specific reference to Listing 112.05(D) was not erroneous. Even if more discussion was advisable, that failure was harmless. The ALJ discussed the evidence with regard to Plaintiff's intellectual function at length, including Plaintiff's school history and the results of objective testing. Although the ALJ did not cite to this specific listing or use the term "mental retardation," it is obvious from the ALJ's discussion of and conclusions from the evidence that the ALJ did not find Plaintiff to be mentally retarded. Indeed, the ALJ's statement that Plaintiff did not meet or present the functional equivalent of any Listing necessarily meant that the ALJ found Listing 112.05(D), and all other Listings, to be inapplicable.

Despite not using this specific verbiage, the ALJ clearly did not find that Plaintiff currently suffered from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." That Plaintiff was not suffering from such deficiencies flows from the ALJ's finding that Plaintiff had no limitations or less than marked limitations in any of the six functional domains, including acquiring or using information. It also flows from the ALJ's citation to the WRAT-4

13

tests, which showed low average to average results. And it flows from the ALJ's assessment of the Plaintiff's academic history in which the ALJ noted Plaintiff's past academic problems, but also found that Plaintiff was currently progressing much better and had been promoted since third grade.

As for the "borderline" IQ score of 68, the ALJ never expressly stated that he considered the results invalid or questionable. But it was otherwise clear that the ALJ at least viewed these results with substantial doubt. The ALJ noted that these results were inconsistent with the other intelligence tests and Plaintiff's current academic record. And the ALJ repeatedly cited Dr. Long's own conclusion that the results underestimated Plaintiff's academic abilities. Clearly, the ALJ found that these results did not establish mental retardation.

Thus, Plaintiff's argument that the ALJ "deprived Plaintiff of a Full and Fair Hearing" because the ALJ provided "no rationale" for why Plaintiff failed to meet the mental retardation listing fails. The ALJ expressly stated that no listing applied and provided detailed discussion of the record evidence that clearly explains why Plaintiff did not suffer from the deficiencies required by the mental retardation listing. No remand is necessary to require the ALJ to go through the mechanical exercise of repeating this same analysis with express reference to Listing 112.05(D).

14

B.      The ALJ Did Not Err In Finding No Marked Limitations

More substantively, Plaintiff argues that the ALJ erred in finding no marked limitations in at least two of the three following domains: acquiring and using information, attending and completing tasks, and interacting and relating with others. *See* Pl. Brf. [10] at 13-17. According to Plaintiff, various items of evidence show that she suffered from marked limitations in these domains, including Dr. Long's IQ test results, statements from Plaintiff's teacher Ms. Nesbitt and certain medical progress notes reflecting behavioral problems at school. *See id*. Plaintiff argues that these items "are substantial evidence that Plaintiff has a marked limitation" in these three domains. *Id.* at 15-17.

Plaintiff's argument fails for the threshold reasons that she articulates the wrong legal standard on appeal. The question before the undersigned is not whether substantial evidence would have supported a contrary finding by the ALJ.  There may have been conflicting evidence that would have supported different findings, but the undersigned is not free to reverse on that basis. The Court can reverse only if no substantial evidence exists to support the ALJ's finding. Plaintiff's brief does not argue this standard. Moreover, regardless of how Plaintiff presents the argument, the Court finds that substantial evidence supports the ALJ's decision.

15

With regard to the domain of Acquiring and Using Information, the ALJ found that Plaintiff had less than marked limitations based primarily on the low average to average WRAT-4 test results, Plaintiff's recent history of academic progress, and Dr. Long's assessment that the "borderline" IQ score underestimated Plaintiff's actual abilities. R. at 28-29. The ALJ also noted that Plaintiff's performance improved once she began receiving mental health treatment and medication in 2009. R. at 25-26. The evidence the ALJ cited constituted substantial evidence and the ALJ's decision in this regard is therefore not subject to reversal by this Court.

Plaintiff in her brief and comments at oral argument primarily relied on a letter and questionnaire from Plaintiff's teacher, Ms. Nesbitt, dated January 29, 2008 and February 5, 2008 respectively. Pl. Br. [10] at 15-17. In her submissions, Ms. Nesbitt stated that Plaintiff had "obvious" problems (although Ms. Nesbitt did not check the boxes indicating that any of these were "serious" problems) in various areas including comprehending and doing math, understanding and participating in class discussions, expressing ideas in written form, learning new material, and applying problem-solving skills. R. at 153. Ms. Nesbitt also stated that Plaintiff required extra help, and that her math and social studies scores on the CRCT were below where she should be for her age. R. at 153, 169. Ms. Nesbitt, however, stated that "if [Plaintiff] would apply

16

herself in class, there would not be a slight problem or obvious problem," and that "[a]t her age, friends are more important than lesson." R. at 153. Ms. Nesbitt also appeared to qualify her statement that Plaintiff experienced problems learning new material with the statement, "if she would study." *Id.* Ms. Nesbitt also stated with respect to her assessment of other domains that "Robneka can do independent work. She doesn't want to take the time to do it . . . . Her prob[lem] is more behavior than academic." *Id.* at 154.

However, Ms. Nesbitt also wrote that plaintiff "has some problems that I can not explain in words. There is something going on that probably need further evaluated [sic] maybe by a Doctor. Sometimes she seems that she just don't [sic] understand how to do simple tasks, such as following directions." R. at 158.

The ALJ discussed and considered Ms. Nesbitt's report. R. at 24. The ALJ found based on the evidence as a whole, including Plaintiff's overall academic history and test reports, that Plaintiff did not have a marked limitation. The ALJ also relied on the evidence that Plaintiff only began receiving treatment for her ADHD and other mental impairments after June 2008, after Ms. Nesbitt's report, and that "once [Plaintiff] began treatment, the claimant showed even further progress academically and had fewer behavioral problems." R. at 27.

17

The ALJ's findings and conclusions are supported by substantial evidence. Ms. Nesbitt's report itself was mixed in that it reflected the teacher's feelings that Plaintiff had "obvious problems" and issues that should be "further evaluated." But Ms. Nesbitt declined to check any box noting a "serious" problem in acquiring or using information, and very clearly opined that much of Plaintiff's problem was behavioral, not academic, and resulted from Plaintiff putting her social life ahead of studying and otherwise applying herself to school work. When combined with Dr. Long's evaluation, the other test results, the mental health treatment, and the ALJ's review of Plaintiff's academic history as a whole, substantial evidence supported the ALJ's conclusion.

With regard to the domain of Attending and Completing Tasks, the ALJ also found that Plaintiff suffered from less than marked limitations:

> The claimant was reported as having problems with working independently, listening to instructions, and with not wanting to take time to understand and complete tasks, but at the times of these reports the claimant was not receiving any treatment for either behavioral or mental problems. Since she began receiving mental health treatment and taking medications, her records indicate that she is performing much better in this area.

R. at 29.

Plaintiff argues that "[w]hile medical progress notes indicate fluctuations in symptoms, progress notes dated February 10, 2009 indicated ongoing complaints from . . . [Plaintiff's] teachers about her attitude; she was increasingly aggressive, having destroyed property and been disrespectful and apathetic." Def. Brf. [10] at 15-16. Plaintiff also notes Mrs. Nesbitt's report of "serious problems" in Plaintiff's ability to wait to take turns, change from one activity to another without being disruptive and work without distracting self or others. *See id*. at 16 (citing R. at 154). Plaintiff also notes Mrs. Nesbitt's report of Plaintiff's "obvious problem" with refocusing to task when necessary, organizing own things or school materials, completing class/homework assignments, and completing work accurately without careless mistakes. *See id*. (citing R. at 154).

For the reasons stated above, the undersigned finds that substantial evidence supports the ALJ's finding in this regard. The ALJ was within his discretion in concluding that Ms. Nesbitt's report, as a whole, failed to establish marked limitations and that the general trend reflected improvements upon the inception of mental health treatment later in 2008. Indeed, while the progress notes reflect ups and downs, several office visits in late 2009 state that Plaintiff is "really doing well in school," and "her verbal skills are excellent and her mental status exam as I see it now is quite

19

all right." R. at 266; *see also* R. at 267.[2] It was also with respect to this specific

domain that Ms. Nesbitt stated, "[Plaintiff] doesn't want to take the time to do [the

work] . . . . Her prob[lem] is more behavior than academic." R. at 154. Substantial

evidence thus supports the ALJ's finding.

With regard to the domain of Interacting and Relating With Others, the ALJ

wrote:

> The Record contains reports of the claimant having behavioral problems
> in the classroom with distracting other [sic] and not showing respect
> towards adults. The claimant's teacher described the claimant's [sic] as
> having a slight to obvious problem in interacting and relating to others
> and reported that the claimant had been placed in detention for her bad
> behavior. Since beginning mental health treatment, the claimant is noted
> to have improved in this area.

R. at 30.

Plaintiff argues that the ALJ misstated the evidence because "Plaintiff's teacher

Ms. Nesbitt described 'a very serious problem' following rules and taking turns in a

---

[2] The record shows three visits in 2010 in which Plaintiff's mood had worsened and in which Plaintiff's mother had reported worsening academic performance. R. at 268-271. However, the notes also make clear that Plaintiff's mother during this period was refusing the recommended treatment for Plaintiff and was not cooperating with treating doctors. The last progress note concludes by saying that "I have told [Plaintiff's mother] that I cannot continue treating [Plaintiff] since I am not allowed by her to prescribe anything other than what she wants." R. at 271. That Plaintiff suffered a reversal because her mother stopped cooperating with the treating physicians does not help Plaintiff meet her burden of proof here.

conversation." Pl. Brf. [10] at 17 (quoting R. at 155). Plaintiff also notes records of her suspensions for fighting, her irritability and lability. *See id*. (citing R. at 205, 256, 268). The Commissioner appears to concede that the ALJ mischaracterized Ms. Nesbitt's observations in this area, but argues that any such error was harmless "as the ALJ properly discounted Ms. Nesbitt's evaluation because her assessment was made prior to the start of Plaintiff's mental health treatment." Def. Brf. [13] at 21.

The Commissioner criticizes Plaintiff's argument as over-reliant on the observations of Plaintiff's teacher Ms. Nesbitt. "Ms. Nesbitt's February 2008 observation," the Commissioner writes, "does not consider Plaintiff's functioning after she began mental health treatment." *Id*. at 20. Furthermore, "[t]he 2009 and 2010 mental health treatment notes consistently showed Plaintiff was calm, cooperative, and had little difficulty interacting with others." *Id.* In addition, "[a]t the hearing, Plaintiff testified she had friends, got along with her siblings, and spent time with her cousins." *Id.*

The undersigned agrees with the Commissioner. To begin, Mrs. Nesbitt's assessment of Plaintiff was at best mixed. She rated Plaintiff as having "no problem" in playing cooperatively with other children and making and keeping friends. R. at 155. Plaintiff, Mrs. Nesbitt wrote, had only "a slight problem" with expressing anger

21

appropriately; relating experiences and telling stories; using language appropriate to the situation and listener; and in using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. *Id.* Plaintiff had "obvious problem[s]" with seeking attention appropriately; respecting/obeying adults in authority; and in introducing and maintaining relevant and appropriate topics of conversation. *Id.* These assessments, combined with the ALJ's assessment of the progress Plaintiff realized through mental health treatment, and Plaintiff's overall academic history, provided substantial evidence to support this portion of the ALJ's finding.

While it is undisputed that the ALJ misstated the level of severity Ms. Nesbitt attributed to Plaintiff's inability to follow rules, that mistake was harmless. The ALJ made clear that he found Ms. Nesbitt's statements of limited value because they predated the Plaintiff's mental health treatment and the improvement she experienced while she was cooperating and following the medication prescribed by her doctors. R. at 30. Especially in combination with the ALJ's overall assessment of Plaintiff's academic history, this strongly suggests that the ALJ's mistake in recounting this detail was not material and a remand to correct this mistake would be a waste of time

and resources. Clearly, the ALJ would have found no marked limitation in this domain regardless.

C.      The ALJ's Assessment of Plaintiff's Credibility

The ALJ found that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." R. at 27. In making this finding, Plaintiff argues that "the ALJ misstated some of . . . [Plaintiff's] teacher's opinions, and consultative Dr. Long's opinion." Pl. Brf. [10] at 18. Furthermore, the "ALJ did not acknowledge in evaluating credibility Plaintiff's need for medications" such as Risperdone, Concerta and Trileptal as well as "multiple adjustments in the dosages" of those medications. *Id.* at 18-19.

The Commissioner disagrees. First, the Commissioner argues that "Plaintiff's activities of daily living did not support her complaints of disabling limitations." Def. Brf. [13] at 22. "Plaintiff testified that she does house chores, has friends, gets along with her siblings, and spends time with her cousins." *Id.* Plaintiff also testified that she passed all of her eighth grade subjects except for math in the eighth grade CRCT exam; was promoted to ninth grade; had no detentions in ninth grade; and was passing her ninth grade classes except for reading. *See id.*

"Moreover," the Commissioner argues, "the ALJ properly noted Plaintiff's medications effectively controlled" Plaintiff's symptoms. *Id.* "Additionally, Plaintiff's mother refused to consider the medication suggested by Dr. Antonio Luis, M.D., in 2010." *Id.* at 23. The Commissioner argues that this refusal precludes any finding of disability under applicable Eleventh Circuit precedent. *See id.*

The Commissioner also contests Plaintiff's assertion that the ALJ misstated the opinions of Dr. Long. "While the ALJ did not repeat Dr. Long's report verbatim, the ALJ's explanation was consistent with that of Dr. Long's report." *Id.* at 23-24. Moreover, any "imprecise summary of" Plaintiff's teacher's opinion "is harmless since" that assessment was based on Plaintiff's behavior before the start of her mental health treatment. *Id.* at 24.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

24

1991); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). When these standards are met, "all evidence about the intensity, persistence and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561.

"An ALJ's credibility findings are an important factor in the application of the pain standard." *Moody v. Astrue*, No. 1:10-cv-397-TFM, 2011 WL 2693387, at *7 M.D. Ala. July 7, 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)). Witness credibility is for the Commissioner to determine, not the courts. *See Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991); *see also Sellers v. Barhart*, 246 F. Supp. 2d 1201, 1213 (M.D. Ala. 2002) ("The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts."). "If the ALJ decides not to credit . . . [a claimant's] testimony, he must do so explicitly, explaining why the testimony is not worthy of belief." *Sheldon v. Astrue*, 268 F. App'x 871, 871-872 (11th Cir. 2008) (citing *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In general, an ALJ's evaluation of a claimant's symptoms considers "medical findings, a claimant's statements, statements by the treating physician, and evidence regarding how the pain affects the claimant's daily activities and ability to work." *Moody*, 2011 WL 2693387 at *7 (citing 20 C.F.R. § 416.929(a)). When evaluating a claimant's subjective symptoms, the ALJ must also consider the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; the type, dosage, and effectiveness of medication; and any measures used by the claimant to alleviate the pain. *See* 20 C.F.R. § 416.929(c)(3). "Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence." *Cawley v. Astrue*, No. 1:10-cv-538-TFM, 2011 WL 4435435, at *6 (M.D. Ala. Sept. 23, 2011) (citing *Osborn v. Barnhart*, 194 F. App'x 654, 664-665 (11th Cir. 2006)); *see also* 20 C.F.R. § 404.1529(c)(4) (stating that "We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . about how your symptoms affect you."). "A resolution of conflicts between the subjective evidence and the medical evidence should depend on the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Cullivan v. Shalala*, 886 F. Supp. 568, 577 (5th Cir. 1995). ALJ's are not, however, required to cite

26

particular regulations, cite specific cases, or use particular phrases or formulations in their review of a Plaintiff's subjective symptoms. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). All that is required is that the Court be able to determine if the ALJ applied the statutory requirements and the Commissioner's regulations as applied by this Circuit. *Id.*

The ALJ wrote in pertinent part:

As discussed, despite the allegations that the claimant[, who was born on May 11, 1993,] has had severe mental and behavioral problems since the age of two, there is no evidence with the current application of the claimant receiving mental health treatment or medication prior to June of 2008. Additionally, in contrast to the claimant's poor performance on stadardize [sic] testing during 2008, the evidence shows that her actual academic performance was better than her tests results indicated she was capable. The majority of reports in evidence concerning the claimant's abnormal and disruptive behavior and her poor performance come from her mother and, as indicated in Dr. Long's report, the claimant's performance on testing and the reports regarding her behavior need to be considered in light of her high risk environment and other demographic factors. While the claimant's teacher also reported problems with the claimant's behavior, which affected her academic performance, once she began treatment, the claimant showed even further progress academically and had fewer behavioral problems.

In consistent [sic] with the early reports regarding the claimant's disruptive behavior and problems in school and with learning, at the hearing claimant's mother testified that in the 8th grade the claimant passed all of the sections of the CRCT and passed all of her classes with the exception of math. She also testified that the claimant['s] behavior was better and that she had not had any detention in school that year. She

27

also testified that the claimant was getting along with her family and friends and that she was performing chores.

R. at 27.

At the outset, the undersigned considers this explanation to be a "clearly articulated credibility finding with substantial supporting evidence in the record . . ." *Foote v. Chater*, 67 F.3d at 1562. Per the discussion above, the Progress Notes from Plaintiff's mental health treatment providers chronicle steady improvement in her behavior and performance in school, progress that occurred *after* the report from Plaintiff's teacher Mrs. Nesbitt. The fact that these opinions came from treating physicians makes them particularly significant. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary . . . . A similar preference for the opinions of treating doctors is found in the Commissioner's regulations" at 20 C.F.R. § 404.1527(d)(2) (internal quotations and citation omitted). Substantial evidence thus supports the ALJ's credibility finding.

Separately, the undersigned rejects Plaintiff's argument that the ALJ misstated the opinion of Plaintiff's teacher. Per the discussion above, teacher Nesbitt provided

28

a mixed opinion of Plaintiff's behavior. Plaintiff's emphasis on only the most negative parts of that assessment is thus not persuasive.

Finally, to the extent the ALJ may have mischaracterized Dr. Long's opinion, that mistake was at most harmless error. Reviewing Plaintiff's WISC-IV test results, Dr. Long wrote, "On the achievement tests, we find that Robneka has made better progress in school than we would anticipate. In fact, school has been [a] successful experience for her." R. at 207. After recounting Plaintiff's WISC-IV scores, the ALJ wrote, "Further noting that the claimant's test results were not an accurate reflection of her actual abilities, Dr. Long pointed out that the claimant was progressing in school better than her test score indicated she was capable." R. at 25. It is difficult to identify any substantive difference between these remarks. Assuming *arguendo* that the ALJ's description is a bona fide factual error, that error is harmless. "Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination." *Kemp v. Astrue*, 308 F. App'x 423, 425 (11th Cir. 2009); *see also Robertson v. Astrue*, No. 11-0205-N, 2011 WL 6151548, at *2 (S.D. Ala. Dec. 12, 2011) (citing *Sorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Here, the fundamental basis of the ALJ's decision is the progress notes from Plaintiff's treating physicians. Any error by the ALJ in characterizing the

29

sentence in question from Dr. Long's report would therefore not have changed the final result the ALJ reached.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**, and that this action be **DISMISSED** with prejudice.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 26th day of August, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE